# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHELLEY DROZ, individually and as Executor for the Estate of Eric C. Droz, deceased, | § § § | |
| | § | No. 211, 2021 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court of the State of Delaware |
| | § | |
| v. | § | |
| | § | C.A. No. N19C-06-024 |
| HENNESSY INDUSTRIES, LLC, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: January 19, 2022
Decided: March 28, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting this Court *en Banc*.

Upon appeal from the Superior Court of the State of Delaware: **REVERSED**.

Michael C. Dalton, Esquire (*argued*), Bartholomew J. Dalton, Esquire, Ipek Kurul, Esquire, Andrew C. Dalton, Esquire, DALTON & ASSOCIATES, P.A., Wilmington, Delaware, Adam L. Balick, Esquire, Michael Collins Smith, Esquire, and Patrick J. Smith, Esquire, BALICK & BALICK, LLC, Wilmington, Delaware, *for Plaintiff Below, Appellant Shelley Droz*.

Brian D. Tome, Esquire, REILLY, MCDEVITT & HENRICH, P.C., Wilmington, Delaware, and Susan M. Valinis, Esquire (*argued*), REILLY, MCDEVITT & HENRICH, P.C., Philadelphia, Pennsylvania, *for Defendant Below, Appellee Hennessy Industries, LLC*.

**SEITZ**, Chief Justice:

In many asbestos cases, the plaintiff claims injury from exposure to a defendant's asbestos-containing product. The facts in this appeal are a variation on that theme. Shelley Droz alleges that her husband, Eric Droz, used an arc grinding machine to resurface brake drum shoes that contained asbestos. She claims that the arc grinder manufacturer—Hennessy—knew that the grinding process generated asbestos dust, and Hennessy had a duty under Washington State law to warn Mr. Droz about the dangers of asbestos dust exposure. Mr. Droz died of mesothelioma, an asbestos-related disease, while the litigation was pending.

The Superior Court granted Hennessy's summary judgment motion. It held that once Hennessy showed that the arc grinder could be used with asbestos-containing and asbestos-free brake drum shoes, the burden shifted to Ms. Droz to show that Mr. Droz used asbestos-containing brake drum shoes with the arc grinder. The court agreed with Hennessy that Mr. Droz did not offer sufficient evidence of exposure to brake drum shoe asbestos dust to counter Hennessy's summary judgment motion.

The issues on appeal are whether the Superior Court misapplied Superior Court Rule 56's burden-shifting framework and, once the burden shifted to the plaintiff to raise a genuine issue of material fact, whether Ms. Droz came forward with evidence demonstrating that Mr. Droz used asbestos-containing brake drum

2

shoes with the arc grinder. We find that the Superior Court properly allocated the summary judgment burdens. But after our review of the record, we reverse because Ms. Droz met her burden to raise a genuine issue of material fact whether Mr. Droz was exposed to asbestos dust from using the arc grinder with asbestos-containing brake drum shoes.

I.

According to the allegations of the complaint and the summary judgment record, while in high school between 1971–73, Mr. Droz was employed by a small, full-service auto shop called Larry's Auto Repair. Mr. Droz serviced car brakes, and used a tool called an "arc grinder." An arc grinder grinds a brake shoe's outer surface for a proper fit of the brake shoe against the brake drum. Grinding an asbestos-containing brake shoe releases asbestos dust into the air.[1] AMMCO, Hennessy's predecessor-in-interest, manufactured the arc grinder used by Mr. Droz.

While Mr. Droz used the arc grinder to grind many types of brake shoes, he identified only three specific brands—Bendix, Wagner, and Raybestos.[2] All three companies sold brake drum shoes in the early 1970s that contained asbestos.[3]

---

[1] The arc grinder had a bag attached to collect the dust, but it was not intended to collect all the dust from grinding a brake shoe. Hennessy described the bag as a "definite health hazard." App. to Opening Br. at A411; A416.

[2] *Id.* at A375–76.

[3] *Id.* at A446–47; A451–53; A460.

Bendix released its first asbestos-free brake drum shoe in 1983, designed for one specific vehicle type.[4] It is unclear from the record when Bendix released asbestos-free brake drum shoes for passenger vehicles, but it was at least by 1987 when it released an aftermarket version.[5] All of its brake shoes were asbestos-free by 1988.[6]

Wagner had a similar history. In an interrogatory response for a different lawsuit, Wagner stated that, until 1984 its brake products contained asbestos.[7] Another interrogatory asked if Wagner had researched or developed an asbestos-free product to replace its asbestos-containing products. Wagner responded that it was currently using asbestos-free materials in its brake products, but it had not determined that asbestos-free brake shoes were safe until 1978.[8] Raymark Industries, Inc., successor-in-interest to Raybestos, also stated in an interrogatory response that most of its brake products produced before 1983 contained asbestos.[9]

In December 2018, physicians diagnosed Mr. Droz with mesothelioma, an asbestos-related disease. He and his wife filed suit against Hennessy and alleged that Mr. Droz developed mesothelioma from exposure to asbestos dust while using

---

[4] *Id.* at A446.
[5] *Id.* at A447.
[6] *Id.* at A447–48. Although Bendix sold an asbestos-free disc brake shoe in 1969, it was intended only for "heavy-duty applications like police and taxi usage on the fronts." *Id.* at A445–46.
[7] *Id.* at A451–53.
[8] *Id.* at A453.
[9] *Id.* at A457; A460.

the arc grinder. Mr. Droz passed away in 2020. Ms. Droz was substituted for Mr. Droz as executor of his estate.

As a preliminary matter, the Superior Court ruled that Washington State law applied to the substantive claims. Following discovery, Hennessy moved for summary judgment and raised among other defenses a product identification defense. Hennessy argued that Ms. Droz failed to satisfy her burden under Rule 56 as applied in *Stigliano v. Westinghouse*, a Superior Court decision addressing product identification in the summary judgment context.[10] Hennessy asserted that the arc grinder could be used with asbestos-containing and asbestos-free drum brake shoes, and Ms. Droz had not offered sufficient evidence to show that Mr. Droz used the arc grinder with asbestos-containing brake drum shoes. Ms. Droz responded that the record showed that most of the brake drum shoes sold in the 1970s by the three manufacturers contained asbestos and, according to her expert, brake drum shoes almost universally contained asbestos in the 1970s. Thus, it was overwhelmingly likely that Mr. Droz used the arc grinder with asbestos-containing brake drum shoes from the three brake shoe manufacturers.

The Superior Court granted Hennessy's summary judgment motion.[11] The court held that because Hennessy's arc grinder could be used with asbestos-

---

[10] 2006 WL 3026171 (Del. Super. Oct. 18, 2006).
[11] *In re Asbestos Litig. (Droz)*, 2021 WL 2349527, at *1–4 (Del. Super. Apr. 15, 2021).

containing and asbestos-free brake drum shoes, *Stigliano* shifted the burden to Ms. Droz to show that Mr. Droz was exposed to asbestos dust from asbestos-containing brake drum shoes while using the arc grinder.[12]  The court concluded that she failed to meet her burden:

> Thus, although Plaintiff generally identified the manufacturers of brake shoes Mr. Droz encountered (including those [sic] Bendix, Wagner, and Raybestos), the record is devoid of any testimony linking his work to a particular manufacturer's brake or even an asbestos containing brake. This is fatal to Plaintiff's ability to satisfy her burden under *Stigliano*.[13]

Ms. Droz timely appealed the decision of the Superior Court.  We review the Superior Court's grant of summary judgment *de novo* and examine the facts in a light most favorable to the non-moving party.[14]

## II.

Asbestos exposure cases are beset with evidentiary challenges.  The latency period before disease onset is lengthy.  Memories fade about the circumstances of exposure.  The plaintiff often passes away before litigation is concluded.  These challenges are particularly acute when it comes to product identification—proving that the plaintiff was exposed to an asbestos-containing product manufactured by a

---

[12] *Id.* at *4.
[13] *Id.*
[14] *In re Asbestos Litig. (Collins)*, 673 A.2d 159, 161 (Del. 1996) (citing *Merril v. Crothall-American, Inc.*, 606 A.2d 96, 99–100 (Del. 1992)).

specific defendant. The difficulties often surface at the summary judgment stage of litigation.

Superior Court Civil Rule 56 requires a party moving for summary judgment to show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15] If the moving party makes this showing, the burden shifts to the non-moving party to prove the existence of a genuine issue of material fact.[16] The court reviews the record, "including any reasonable inferences to be drawn therefrom," in the light most favorable to the non-moving party.[17]

The Superior Court's *Stigliano* decision serves as a proper framework to apply Rule 56 to product identification disputes in asbestos exposure cases. In *Stigliano*, the plaintiff alleged he was exposed to asbestos welding rods manufactured by Westinghouse Electric Corporation ("Westinghouse").[18] Westinghouse moved for summary judgment. The court had to decide "whether a genuine issue of material fact exist[ed] with respect to plaintiff's exposure to an asbestos-containing product manufactured, sold or distributed by [Westinghouse]."[19] The plaintiff claimed that he was exposed to, and only worked with, Westinghouse welding rods made with

---

[15] Super. Ct. Civ. R. 56(c).

[16] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).

[17] *Stayton v. Clariant Corp.*, 2014 WL 28726, at *1 (Del. Jan. 2, 2014) (TABLE) (quoting *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009)).

[18] 2006 WL 3026171, at *1. Westinghouse later became the CBS Corporation. *Id.*

[19] *Id.*

asbestos. According to the court, however, the record showed that the plaintiff also worked with other welding rods. And the record also showed that Westinghouse manufactured both asbestos-containing and non-asbestos-containing welding rods when the plaintiff claimed exposure. In granting summary judgment to the defendant, the court held:

> When the record reveals that a defendant manufactured both asbestos-containing and non asbestos-containing versions of a product during the time period of alleged exposure, in the absence of evidence directly or circumstantially linking the plaintiff to the asbestos-containing product, the Court cannot draw the inference of exposure and summary judgment on product nexus must be granted.[20]

*Stigliano* addressed a particular factual situation. The defendant manufactured an asbestos-containing product and an asbestos-free product at the time of alleged exposure, but the plaintiff did not connect his exposure to the asbestos-containing product. In other words, it was essentially an equal likelihood that the plaintiff was exposed to the asbestos-containing product or the asbestos-free product. Since the *Stigliano* decision, a plaintiff resisting a defendant's summary judgment motion under similar factual circumstances must show some direct or circumstantial evidence of exposure to the asbestos-containing product.[21]

---

[20] *Id.* (citing *Lipscomb v. Champlain Cable Corp.*, 1988 WL 102966 (Del. Super. Sept. 12, 1988)).
[21] *See, e.g.*, *In re Asbestos Litig. (Petit)*, 2020 WL 5122939, at *7 (Del. Super. Aug. 31, 2020); *Robinson v. Union Carbide Corp.*, 2019 WL 3822531, at *11 (Del. Super. Aug. 15, 2019); *In re Asbestos Litig. (Lavelle)*, 2017 WL 11025994, at *2–3 (Del. Super. Sept. 19, 2017); *In re Asbestos Litig. (Vaughn)*, 2012 WL 1409732, at *1 (Del. Super. Jan. 20, 2012); *In re Asbestos Litig. (Pelzel)*, 2011 Del. Super. LEXIS 523 (Del. Super. Aug. 17, 2011); *In re Asbestos Litigation, (Timmons)*, 2008 WL 2690397, at *2 (Del. Super. May 15, 2008).

## A.

Ms. Droz argues that the *Stigliano* decision has led to new evidentiary requirements that asbestos exposure plaintiffs must overcome. As she argues, a plaintiff must now show exclusive use of an asbestos-containing product, or direct evidence, as opposed to circumstantial evidence, of exposure to an asbestos-containing product.[22] She asserts that the evidentiary burden is greater than Rule 56 requires, and defendants automatically win at the summary judgment stage if *Stigliano* applies. According to Ms. Droz, *Stigliano* should apply only in cases where a plaintiff produces "coin-flip" product identification evidence, meaning the plaintiff's exposure to an asbestos-containing product is no greater than a toss-up.

Hennessy responds that *Stigliano* is a straightforward application of Rule 56 to a specific evidentiary issue prevalent in asbestos litigation. Hennessy also argues that *Stigliano* is not an automatic win for defendants. The defendant must meet the initial burden—to show that it manufactured an asbestos-free product at the time of exposure—before the burden shifts to the plaintiff. And even if met, the plaintiff can survive summary judgment by showing direct or circumstantial exposure to an asbestos-containing product. Finally, Hennessy disputes Ms. Droz's contention that

---

[22] Opening Br. at 17–24 (citing *In re Asbestos Litig. (Sturgill)*, 2017 WL 6343519 (Del. Super. Dec. 11, 2017); *In re Asbestos Litig. (Aveni)*, 2017 WL 5594055, at *1 (Del. Super. Nov. 8, 2017); *Lavelle*, 2017 WL 11025994, at *1; *In re Asbestos Litig. (Holstege)*, C.A. No. N14C-06-038, (Del. Super. Apr. 24, 2017) (available at Compendium of Unreported Cases to Appellant's Opening Br. at Tab 4); *Vaughn*, 2012 WL 1409732, at *1; *Pelzel*, 2011 Del. Super. LEXIS 523, at *1; *Timmons*, 2008 WL 2690397, at *1).

*Stigliano* now requires direct evidence of exposure to, or exclusive use of, an asbestos-containing product. The cases Ms. Droz cites, it argues, do not require exclusive exposure to an asbestos-containing product, and the Superior Court has repeatedly said that either direct or circumstantial evidence of exposure can defeat summary judgment for the defendant.

B.

The Superior Court in *Stigliano* correctly applied Rule 56's burden-shifting framework for a specific product identification dispute at the summary judgment stage of asbestos exposure litigation. Under *Stigliano*—and as required by Rule 56—the defendant has the initial burden. It must show that it manufactured an asbestos-containing and an asbestos-free product at the time of alleged exposure. If the defendant makes this showing, the burden shifts to the plaintiff to show through direct or circumstantial evidence that a genuine issue of material fact exists whether the plaintiff was exposed to defendant's asbestos-containing product. The Superior Court's *Stigliano* decision and its burden-shifting framework in asbestos product identification disputes are consistent with Rule 56 and its focus on identifying the absence of genuine issues of material fact about the plaintiff's exposure to a defendant's asbestos-containing product.

As for Ms. Droz's argument that *Stigliano* has been expanded and now requires a showing of direct evidence of exposure to an asbestos-containing product,

we disagree. Ms. Droz relies on cases where the plaintiffs alleged that Fel-Pro gaskets used in pipe valves and fittings exposed them to asbestos.[23] Fel-Pro moved for summary judgment because it sold both asbestos-containing and asbestos-free versions of its gasket at the time of alleged exposure. The Superior Court applied *Stigliano* and shifted the burden to the plaintiffs to show that they were exposed to asbestos-containing gaskets. In most of those cases, the court granted the defendant's summary judgment motion because the plaintiffs failed to make any showing—either direct or circumstantial—of exposure to an asbestos-containing product.[24] In one Fel-Pro gasket case, the court denied summary judgment when the plaintiff showed through circumstantial evidence that during the period of the plaintiff's alleged exposure, 98% of Fel-Pro's gaskets contained asbestos.[25] The court found that this overwhelming probability of asbestos exposure was enough to link the plaintiff's exposure to asbestos-containing gaskets.[26] None of the Fel-Pro gasket cases foundered on the shoals of failing to show direct evidence of exposure.

We also disagree with Ms. Droz's assessment that, after *Stigliano*, a plaintiff must show exclusive use of the defendant's product to defeat summary judgment. The cases relied on by Ms. Droz are distinguishable as they refer to exclusivity in a

---

[23] *Lavelle*, 2017 WL 11025994, at *3; *Vaughn*, 2012 WL 1409732, at *1; *Pelzel*, 2011 Del. Super. LEXIS 523, at *10–11; *Holstege*, C.A. No. N14C-06-038, at 6–7.
[24] *Lavelle*, 2017 WL 11025994, at *3; *Pelzel*, 2011 Del. Super. LEXIS 523, at *10–11; *Holstege*, C.A. No. N14C-06-038, at 6–7.
[25] *Vaughn*, 2012 WL 1409732, at *1.
[26] *Id.*

11

different context. For example, Ms. Droz points to three cases where the plaintiffs alleged exposure to asbestos fibers in ready-mix joint compounds—a product used to prepare drywall for construction.[27] In those cases, however, the defendant Union Carbide Corporation ("Union Carbide") sold asbestos fibers that were incorporated into the ready-mix joint compounds. There was no dispute whether the Union Carbide product contained asbestos. The question was whether a downstream product included Union Carbide's asbestos fibers as opposed to asbestos fibers from another manufacturer.

*Stigliano* does not apply in this instance, as evidenced by the fact that two of the three cases do not even mention *Stigliano*.[28] The one case that does cite *Stigliano*, *In re Asbestos Litigation (Timmons)*, ultimately focused on whether Union Carbide was an exclusive supplier of asbestos fibers to the ready-mix joint compound manufacturer, and it is unclear how *Stigliano* factored into its analysis.[29] To the extent that *Timmons* is read to require exclusive use of a defendant's asbestos-containing product, it is inconsistent with the plaintiff's burden under Rule 56.

*Stigliano* and its Rule 56 burden-shifting framework do not require the plaintiff to show by direct evidence exposure to, or exclusive use of, a defendant's

---

[27] *Sturgill*, 2017 WL 6343519, at *1–3; *Aveni*, 2017 WL 5594055, at *1–2, *Timmons*, 2008 WL 2690397, at *1–2.

[28] *Sturgill*, 2017 WL 6343519, at *1–3; *Aveni*, 2017 WL 5594055, at *1–2.

[29] *Timmons*, 2008 WL 2690397, at *1–2.

asbestos-containing product. At most, the Superior Court has expanded *Stigliano* to different factual circumstances where product identification arises.[30] In response to Hennessy's summary judgment motion, Ms. Droz was required to raise a genuine issue of material fact, through direct or circumstantial evidence, that Mr. Droz was exposed to asbestos dust from asbestos-containing brake drum shoes when using Hennessy's arc grinder.

C.

We turn to Ms. Droz's other arguments on appeal. First, she claims that *Stigliano* should not apply to a product, like the arc grinder, that does not contain asbestos. We disagree. While this case does not involve identification of a particular defendant's asbestos-containing product, it does require identification of an asbestos-containing product used with the defendant's arc grinder. To trigger the duty to warn, Ms. Droz must show by direct or circumstantial evidence that Mr. Droz was exposed to asbestos dust when using the arc grinder, and the dust came from grinding asbestos-containing brake drum shoes.[31]

Next, Ms. Droz claims that *Stigliano*, as a Delaware procedural law, displaces the substantive law of other states. According to Ms. Droz, Washington State law holds manufacturers liable for asbestos-free products if those products inevitably put

---

[30] *Petit*, 2020 WL 5122939, at *1–3.

[31] *See id.* (holding that *Stigliano* applies where Hennessy showed that the AAMCO arc grinder was used with asbestos-containing and asbestos-free brake products).

13

users at risk of asbestos exposure—like the arc grinder in this case. If this case was brought in Washington State, Ms. Droz argues, Hennessy's summary judgment motion would be denied.

*Stigliano* does not conflict with Washington State law. Washington State applies the same summary judgment standard as Delaware. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."[32] Under Washington State law, the manufacturer of a product is liable if the use of a product creates an inevitable risk of exposure to asbestos.[33] To resist summary judgment, a plaintiff in a Washington State asbestos case must show that a triable issue of fact exists that a manufacturer's product inevitably exposed the plaintiff to asbestos.[34] *Stigliano* requires essentially the same showing. A plaintiff must demonstrate, by direct or circumstantial evidence, exposure to asbestos either from the defendant's product, or through use of a defendant's product that generated asbestos dust.

Ms. Droz also argues that the Superior Court applied *Stigliano* incorrectly when it ruled that Hennessy satisfied its initial burden under *Stigliano* by showing its arc grinder was used with both asbestos-containing and asbestos-free brake shoes. But Hennessy's corporate representative testified that the arc grinder could be used

---

[32] Wash. Super. Ct. Civ. R. 56.
[33] *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1077 (Wash. 2012).
[34] *See Woo v. Gen. Electric Co.*, 393 P.3d 869, 877–78 (Wash. Ct. App. 2017).

with both asbestos-containing and asbestos-free brake shoes.[35]  And other testimony showed that most of the brake shoes produced during that time contained asbestos, meaning some did not.[36]  Hennessy satisfied its initial burden.

Finally, Ms. Droz claims that the Superior Court erred when it ruled that she did not satisfy her burden under *Stigliano* by presenting direct or circumstantial evidence that Mr. Droz used asbestos-containing brake drum shoes with Hennessy's arc grinder.  Viewing the summary judgment record in a light most favorable to Ms. Droz, we are convinced that Ms. Droz raised a genuine issue of material fact as to whether Mr. Droz was exposed to asbestos dust by grinding asbestos-containing brake drum shoes with the arc grinder.

Mr. Droz testified that he worked with Wagner brake shoes while employed by Larry's Auto Repair from 1971–73.[37]  Wagner has stated that it sold asbestos-containing brake shoes throughout the 1970s, and it was not until 1978 that it determined that brake shoes containing other substances "could be used safely for

---

[35] App. to Opening Br. at A324.

[36] *Id.* at A419.

[37] Mr. Droz testified at his deposition: "Q. Do you remember any of the brands of brakes that you used at Larry's Auto Repair?  A. Yes.  Q. What brands do you remember?  A. A lot of Bendix. We used Wagner, Raybestos.  There could have been others.  Those are the main ones I remember."  *Id.* at A375–76.  While Mr. Droz was asked what brakes—not brake drum shoes— he worked with, the context of the questioning shows he was discussing what brake drum shoes he used with the arc grinder.  *Id.* at A367–79.  In the briefing the parties have used "brakes" and "brake shoes" interchangeably, as did the Superior Court.  The three manufacturers Mr. Droz identified all sold brake drum shoes during the time of exposure.  *Id.* at A445–48, A451, A460–61.

some of the same purposes as asbestos-containing brake pads."[38]  Thus, the circumstantial evidence in the record leads to an inference that Wagner produced and sold only asbestos-containing brake drum shoes between 1971 and 1973, and Mr. Droz was exposed to asbestos dust while grinding Wagner brake drum shoes with the arc grinder at that time.

Mr. Droz also testified that he used Hennessy's arc grinder with Bendix brake shoes between 1971 and 1973.[39]  While Bendix sold an asbestos-free disc brake shoe in 1969 designed for use in police or taxi vehicles, it did not release an asbestos-free brake drum shoe for other applications until 1983.[40]  Thus, the evidence leads to an inference that Mr. Droz was exposed to asbestos dust when he used Hennessy's arc grinder to resurface Bendix brake drum shoes from 1971–73.  Ms. Droz satisfied her burden to raise a genuine issue of material fact regarding exposure to asbestos dust from grinding Wagner and Bendix brake drum shoes.[41]

In *In Re Asbestos Litigation (Petit)*, the Superior Court addressed a similar product identification question—whether Hennessy's arc grinder and lathe machines exposed plaintiff Petit to asbestos dust—and granted Hennessy's summary judgment

---

[38] *Id*. at A450–53.  It was not until 1984 that Wagner's brake products were asbestos-free.  *Id*.

[39] *Id*. at A375–76.

[40] *Id*. at A445–48.  Mr. Droz testified that "most all the vehicles I worked on had drum brakes, if we were working on brakes."  *Id.* at A303.

[41] Regarding Raybestos brake drum shoes, the interrogatory responses Ms. Droz relies on state only that Raybestos sold several different brake products, and that most contained asbestos, meaning some did not.  *Id*. at 459–60.  The summary judgment record is not entirely clear about the exposure evidence for this brake drum shoe manufacturer.

motion under *Stigliano*.[42]  But *Petit* is factually distinguishable.  Petit's executor filed suit against Hennessy, claiming that Petit's use of Hennessy's arc grinder and lathe machines exposed Petit to asbestos, and the exposure caused him to develop mesothelioma.  Petit "testified generally that he used Bendix brake products but was unable to identify particular brands of drums as he worked because he was not the person removing the drums from the vehicles."[43]

After showing that Bendix sold asbestos-containing and asbestos-free products at the time of exposure, Hennessy moved for summary judgment and claimed that, under *Stigliano*, the plaintiff failed to raise a genuine issue of material fact about the plaintiff's asbestos exposure.  The Superior Court held that the plaintiff "failed to submit any evidence showing that the specific Bendix products he worked with in conjunction with the [Hennessy] machines contained asbestos, or any evidence that any of the brake products he used with the [Hennessy] machines released friable asbestos."[44]

Here, by contrast, at the summary judgment stage, Ms. Droz has offered evidence that Mr. Droz used Hennessy's arc grinder on drum brake shoes sold by two manufacturers who, at the time of exposure, sold only asbestos-containing drum brake shoes.  Ms. Droz has therefore satisfied her burden under *Stigliano*.

---

[42] 2020 WL 5122939, at *1–3.
[43] *Id.* at *3.
[44] *Id.*

## III.

We reverse the Superior Court's grant of Hennessy's motion for summary judgment, and remand for further proceedings consistent with this opinion.